UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINE SARAH VIVIANE BOUDJELTA, §§§ | |
| §§ *Plaintiff*, | **COMPLAINT** |
| § | Civil Action No. 1:25-cv-1729 |
| § v. § | **JURY REQUESTED** |
| § CLAL-THE NATIONAL JEWISH CENTER § FOR LEARNING AND LEADERSHIP INC § BRADLEY HIRSCHFIELD, ELAN § BABCHUCK, and STEVEN ROTTER § § *Defendants*. § | |

Plaintiff Christine Sarah Viviane Boudjelta ("Plaintiff"), by her counsel, Harman Green PC, alleges for her Complaint against Defendant CLAL-The National Jewish Center For Learning And Leadership, Inc ("Defendant CLAL"), Bradley Hirschfield, Elan Babchuck and Steven Rotter (collectively "Defendants") as follows:

## **PRELIMINARY STATEMENT**

1.      This case is about malicious, retaliatory employment practices ultimately leading to the wrongful and illegal employment termination of Plaintiff' employment, and widespread financial fraud perpetrated by a 501(c)(3) nonprofit, Defendant CLAL.

2.      Plaintiff is a French citizen who was terminated after she uncovered multiple instances of financial fraud and improper payments by CLAL.

## **JURISDICTION**

3.      Pursuant to 28 U.S.C. §1332 this Court may properly hear Plaintiff's claims as there is complete diversity of parties and the amount in controversy well exceeds $75,000.

4.      Pursuant to 28 U.S.C. §1367 this Court may properly hear Plaintiff's State and local law claims as they arise out of the same nucleus of operative fact so as to create the same case or controversy.

1

**PARTIES**

5.      Plaintiff was and is a resident of France.

6.      Defendant CLAL-The National Jewish Center For Learning And Leadership, Inc is a 501(c)(3) not-for-profit corporation with a principal place of business at 440 Park Avenue South 4th Fl, New York, NY10016-8012.

7.      Defendant Rabbi Bradley Hirschfield is president of CLAL and, upon information and belief, is a resident of New York with a residency at 3025 Netherland Ave Apt 5b, Bronx, NY 10463-3406.

8.      Defendant Elan Babchuck is an executive at CLAL and, upon information and belief, is a resident of 630 Elmgrove Avenue, Providence, Rhode Island 02906.

9.      Defendant Steven Rotter is Chairman of the Board of Defendant CLAL, and, upon information and belief, is a resident of New York and has an office at 110 East 59th Street, New York, NY10022 within the offices of Jack Resnick & Sons.

**JURY DEMAND**

10.      Plaintiff respectfully requests a trial by jury.

**STATEMENT OF FACTS**

11.      Plaintiff is a French citizen who was employed through the H-1B visa program.

12.      Plaintiff's employment was initiated by fraud, since Defendant CLAL knowingly underpaid Plaintiff for the Controller position when she started working for Defendant CLAL.

13.      In June 2024, Defendant CLAL submitted a petition to the Immigration Service of the US Department of Homeland Security to obtain an H-1B visa for Plaintiff to continue working for Defendant CLAL, and submitted a patently false and perjurious LCA request for certification of the salary they were paying.

14.      Defendant CLAL intended to profit from Plaintiff being grossly underpaid as a foreign employee.

2

15.     Defendant CLAL has many, many instances of 'cooking the books' in an effort to minimize expenditure while maximizing profits delivered directly to executives.

16.     Defendant CLAL understated Plaintiff's role and responsibilities as equivalent to those of a bookkeeper when Defendants knew that the responsibilities of her role were much more extensive. Such intentional understatement was perjurious and designed to avoid the requirement that Defendant CLAL pay Plaintiff the prevailing wage for her actual job as Controller in the geographical location where she was employed.

17.     Defendant CLAL did this to pay Plaintiff a lower wage than required by law.

18.     Plaintiff's real title and the role she performed was as Controller (as clearly demonstrated on Defendant CLAL's 2023 990 form).

19.     In New York, the prevailing wage for a Controller is approximately $150,000, which was and is known to Defendant CLAL as they are paying Plaintiff's replacement, Ruth Frommer, $150,000 per annum to perform exactly the same functions as Plaintiff.

20.     Ruth Frommer's responsibilities are a verbatim copy of Plaintiff's responsibilities that were listed when Plaintiff joined.

21.     Defendant CLAL was well aware about what they should have been paying Plaintiff the prevailing wage for the work she was asked to perform.

22.     Plaintiff was only paid $92,000 per year.

23.     Defendant CLAL has a pattern and practice of overcompensating executives.

24.     Defendant CLAL's income for the calendar year 2024 was approximately $4.4 million.

25.     Defendant CLAL paid out more than $2 million to its 10 employees, with more than $1.2 million of that being paid just to 3 executives, Defendants Hirschfield and Babchuk, and to President Emeritus Rabbi Irwin Kula, as demonstrated by their 990 filings.

3

26.     However, Plaintiff became aware that certain people, including Rabbi Elan S Babchuck, Executive Vice President, had been for many years receiving income from Defendant CLAL that was not reported in violation of IRS requirements.

27.     Such income was required to be reported (and it was not) on Defendant CLAL's 990 forms since it was a 501(c)(3) organization exempt from federal taxation and Defendant is required to file Form 990s annually.

28.     Plaintiff urged Defendant Babchuk to include his income on the 2023 990 Form, stating that there were severe penalties for a 501(c)(3) tax-exempt organization filing an incomplete or inaccurate 990 Form, which he reluctantly agreed to.

29.     Plaintiff prepared Defendant CLAL's 990 filing for 2023 in conjunction with Defendant CLAL's outside auditors, Forvis Mazars, and outside bookkeepers JITASA, and acting in accordance with their recommendations, Plaintiff informed Defendant CLAL that they should amend Defendant CLAL's 2021 and 2022 990s that had been filed with the IRS already, due to significant errors and omissions they all identified in such filed 990 Forms, but Defendant CLAL's President Defendant Brad Hirschfield and Executive Vice President Defendant Elan Babchuk refused to do so over Plaintiff's objection, not wanting to raise any "red flags" and stated that "the IRS will never find out" about the errors and omissions.

30.     In addition to Plaintiff's attempts to rectify the multiple inaccuracies in Defendant CLAL's 990 filings and correct all the problems with Defendant CLAL's accounts, including addressing the lack of proper recording of many financial matters that had not been properly booked with the necessary backup for several years, Plaintiff saw that Defendant CLAL's senior executives, who were Rabbis, in addition to paying themselves excessive compensation, had with the knowledge of their Board and Chairman, for many years, been taking a significant part of their excessive compensation as 'parsonage,' a tax-free component of compensation paid to clergy

4

intended to pay for their housing, provided that the elements of IRC §107 outlining such requirements are satisfied.

31.    Plaintiff realized that the key elements of IRC §107, requiring recipients to either tend to a congregation as their minister or act as a religious or spiritual teacher on a regular basis had been violated for at least several years, and the total excessive compensation would eventually lead to scrutiny of their compensation with a tax audit of the organization by the IRS and potentially the New York Charities Bureau, with penalties against the recipients of the parsonage and the Board and Chairman, Defendant Steven Rotter, for condoning such fraud.

32.    In addition to Plaintiff's immediate superior, Defendant Rabbi Elan Babchuk, the two other most highly paid leaders, President Emeritus Rabbi Irwin Kula and Defendant President Rabbi Bradley Hirschfield are both shown on Defendant CLAL's 990 forms as being paid unidentified "additional compensation," which is designed to obfuscate the fact that they have been actually receiving highly excessive compensation for their jobs compared to salaries being paid to executives of similar size 501(c)(3) organizations. Such obfuscation was in clear violation of the requirements of IRC §4958 that imposes penalties and interest for excess benefit transactions on the recipients, and also on the Board members fixed with overseeing the management and compensation of employees of a 501(c)(3) organization.

33.    During preparation for the first Board meeting that took place in January 2024, after Plaintiff had been asked by Defendant Rabbi Elan Babchuk to prepare a financial report for the Board to review the financial status of the organization, Defendant Steven Rotter, as Chairman of the Board instructed Plaintiff to collapse all of the lines she created for salaries and expenses of employees into one line in order to avoid questions from members of the Board as to the excessive compensation paid to the leaders of the organization, and charges for inappropriate expenses that were being charged for, e.g., luxury cruises, first-class travel, and expensive restaurant meals for

groups of the leader's friends.

34.     When Plaintiff did not prepare the financial report exactly as mandated by Defendant Steven Rotter, Plaintiff was given a Performance Improvement Plan by Defendant Rabbi Elan Babchuk that she refused to sign because she did not regard it as fair or accurate and because it was retaliatory.

35.     Subsequently, despite Plaintiff working very diligently to close the backlogged audits and receiving praise for this over several months by Defendant Rabbi Elan Babchu, the Defendants jointly and secretly agreed to replace Plaintiff due to the danger she posed.

36.     Defendant CLAL lists other 'other compensation' of the three executives mentioned above, Defendants Hirschfield, Babchuk and Irwin Kula as estimated, and report zero additional income beyond their base pay for 2023 designed to prevent scrutiny of the parsonage component of their total compensation.

37.     Throughout 2024, Plaintiff witnessed a persistent course of Defendant CLAL's abuse of its charitable designation.

38.     For example, President Rabbi Hirschfield spent $20,000 on celebrity cruises during 2024, as he had done prior to Plaintiff's arrival as Controller and no documentation of its charitable purpose was provided even when requested by Plaintiff.

39.     Defendant President Rabbi Hirschfield requested that a credit card tied to Defendant CLAL be given to his wife even though she was not an employee of Defendant CLAL and became upset when Plaintiff stated it was not a proper request.

40.     Defendant CLAL earned $4,464,790 in 2023 from donations and grants, yet spent $2,228,663 in salaries, $1,289,399 of which was paid only to Defendant President Rabbi Hirschfield, President Emeritus Rabbi Kula, and Defendant Executive Vice President Rabbi Babchuck, which is far in excess of the amounts paid to executives in similar 501(c)(3)

6

organizations with a similar financial profile and purpose in the same geographic location, and which represented a much larger percentage of the organization's income than is regarded as appropriate for 501(c)(3) tax-exempt organizations.

41.    Plaintiff was present during a meeting of the Finance Committee of the Board when it was discussed that the compensation paid, and the revenue of Defendant, was out of line – that more money should be spent on programs and that more staff should be hired to maintain a balance.

42.    Defendant President Rabbi Hirschfield and Defendant Executive Vice President Babchuk proceeded to award themselves increases of $25,000 each in salary and hire additional personnel while determining to terminate Plaintiff after the 2023 Form 990 was filed. They decided to use her compensation along with investment revenue to replace her with a new hire, Ruth Frommer, at a higher salary and to hire a "Director of Staff" and other personnel to try to disguise the problem with their own compensation.

43.    In fact, to Plaintiff's knowledge, because she was responsible for the payroll function, aside from one employee, Sandy Hong, who was acting as Executive Assistant to Defendant Rabbi Elan Babchuk, and received the same $92,000 salary as Plaintiff, every employee of Defendant CLAL was paid a higher salary than Plaintiff despite her higher qualifications including her MBA, enrollment as a Doctor of Business Administration candidate and pivotal role in ensuring that the organization was in compliance with its crucial Form 990 filing obligations.

44.    Plaintiff reminded the senior management on multiple occasions about the problems with CLAL's accounts, including failure to properly document expenses and account for grants, including failure to report the incomes of several executives such as Defendant Rabbi Babchuk, and that they risked losing 501(c) status.

45.    This (and other notifications of illegal acts) would make Defendant President Rabbi Hirschfield and Defendant Rabbi Babchuk irate.

46.     Plaintiff had caught Defendant CLAL in its fraudulent activities regarding their deliberate misreporting of financial accounting and tax coverups, and warned them of the potential consequences, which made Plaintiff a danger to the organization.

47.     Ultimately, this sealed her fate.

48.     Defendant CLAL sought to terminate her as soon as possible, but waited until she had completed closing the 2023 books of account and filed the 2023 990 Form to do so, and then they terminated her and her H1B visa status in a particularly malicious, devious and deliberate manner while she was outside the USA.

49.     As an example of Defendant CLAL's improper and fraudulent intentions with regard to handling of sizable grant funding, where Defendant CLAL acted as the "fiscal sponsor" and individuals closely connected to the organization were recipients, despite Plaintiff's urging for them to do so, Defendant CLAL refused to properly document the source of funds received from grantors and the portions attributable to CLAL's fees, despite Plaintiff's urging for them to do so.

50.     In one case, where a grant was paid to an employee, Rabbi Joseph Telushkin, who was a W2 employee for Defendant CLAL, who received a salary of $100,000 and parsonage, Defendant CLAL refused to permit Plaintiff to document the grant as required under proper not-for-profit accounting practice and simply demanded that Plaintiff make the payments without appropriate accounting support for the payment.

51.     As an example of Rabbi Hirschfield's animus towards Plaintiff concerning her attempts to correct Defendant's missteps and fraudulent behavior, reproduced below is an email from Defendant President Rabbi Hirschfield to Ruth Frommer, and copied to Defendant CLAL's counsel and Board member Steve Levin.

52.     Plaintiff complained about not being sent her w-2 for 2024 as required by law, and she did not have access to ADP as she was trapped outside the USA due to Defendant CLAL's

8

malicious termination of Plaintiff while she was outside the USA. Ultimately, the w-2 contained incorrect payment amounts and, to this day, needs to be corrected.

---

**From:** Brad Hirschfield <bhirschfield@clal.org>
**Sent:** February 6, 2025 8:14 AM
**To:** Ruth Lynn Frommer <ruth@clal.org>
**Cc:** Sarah Boudjela <sboudjelta@student.hult.edu>; Levin, Steven H. <slevin@dwpv.com>; Elan Babchuck <elan@clal.org>; Levin, Steven H. <slevin@dwpv.com>
**Subject:** Re: W2 2024 - Requested due to 1/31/ -

External Email / Courriel externe

---

Thank you, Ruth —

And while this may not be relevant, and mostly for Steve's benefit, especially if he thinks we should share it with Phil and Michael, I offer one thougbt:

This is classic behavior for Sarah. She invokes a law that she completely misunderstands, or purposefully misrepresents, failing to appreciate that the forms were made available online well in advance of the deadline, as required by law, and instead shifts the blame to others because she doesn't know what she's talking about or how to take care of her own business.

*Rabbi Brad Hirschfield*
*President,*
*Clal - The National Jewish Center for Learning and Leadership*
*Co-Founder and Executive Editor,*
*TheWisdomDaily.com*

---

53.  Upon information and belief, Defendant CLAL also has been paying portions of Defendant President Rabbi Hirschfield, Defendant President Emeritus Kula, and Defendant Executive Vice President Babchuck's daily and monthly expenses.

54.  In October 2024, Plaintiff was finalizing Defendant CLAL's 2023 audit to file its 990.

55.  Plaintiff inquired about a raise at the time, stating that Defendant CLAL would do well to invest in expanding their programs and other employees' salaries.

56.  Defendant CLAL then, in November 2024, hired a new controller, Ruth Frommer, whom they had originally interviewed at the same time Plaintiff was interviewed in 2023, but did not make her an active employee at a huge increase in salary over Plaintiff until Defendant CLAL could terminate Plaintiff after the end of December, the busiest month of the year, when the 2024 accounts were closed and the grants received.

57.    Effective January 1, 2025, as stated above, Defendant President Rabbi Hirschfield and Defendant Executive Vice President Babchuck gave themselves additional $25,000 per year raises, hired a new employee who is a friend of President Rabbi Babchuk at $108,000 per year with limited responsibilities, and hired a new controller, Ruth Frommer, at $150,000.

58.    Plaintiff inquired about a raise not solely for her own disposable income, but because she was being drastically underpaid as compared to other controller salaries and needed to fund her DBA education.

59.    Defendant Executive Vice President Rabbi Babchuk had an immediate and negative reaction to this.

60.    Plaintiff spoke with Defendant Executive Vice President Babchuck about Defendant CLAL's rental space, which is never used but Defendant CLAL pays $560,000/year to maintain.

61.    Plaintiff explained that this kind of wasteful spending can attract IRS scrutiny and can be very detrimental to Defendant CLAL's 501(c) status.

62.    Defendant Executive Vice President Babchuck then stated that Defendant President Rabbi Hirschfield and Defendant Chairman of the Board Steve Rottman, a real estate executive, wanted to maintain the space "for sentimental reasons."

63.    Defendant CLAL had long wanted to terminate Plaintiff but could not do so as she was the only one who was helping them through closing of their books and completing their 2023 audit so the organization could file their 2023 990 Form and continue to solicit donations and grant funding and paying the executives their excessive salaries.

64.    Once completed, however, Defendant CLAL did fire Plaintiff.

65.    Defendant CLAL gave no justification for Plaintiff's termination except retroactively attempted to state that it was for "poor performance" when in fact Plaintiff had been

praised many times for her extraordinary efforts in closing 3 years of unaudited accounts in less than 10 months. This had enabled Defendant CLAL to file the required 990 Form for 2023 and continue to collect locations and grants just in time before the ultimate deadline.

66.    As well, the termination was discriminatory as well as being retaliatory, because it was designed to target and harm Plaintiff as a foreign citizen.

67.    Plaintiff had returned home to France for a scheduled vacation and to attend her sister's wedding, which was encouraged by Rabbi Babchuk, who knew his plan was to fire her while she was outside the country and try to keep her away due to the simultaneous termination of her H1B status that had been approved by the Immigration Service just one month earlier.

68.    In fact, Defendant Rabbi Elan Babchuk wrote to Plaintiff and misled Plaintiff in urging her to leave the country to attend her sister's wedding by sending her a message on December 31 stating that he would make sure "to do everything reasonable to protect your visa."

69.    While abroad, Defendant CLAL through Defendant Rabbi Elan Babchuk terminated Plaintiff despite assurances that it would not so before she left:

On Tue, Dec 31, 2024 at 3:02 PM Elan Babchuck <elan@clal.org> wrote:
Hi Sarah,

First, I hope Hanukkah has been good to you so far, and that you' re looking forward to a nice trip home to celebrate your sister's wedding. Regarding your availability during that time, please prioritize being with your family, and we will try to limit bothering you while you're away.

70.    Defendant CLAL knew that terminating Plaintiff while she was abroad effectively prevented her from returning to the United States in any capacity and would hamper her ability to find a new position H-1B position.

71.    Defendant CLAL knew that terminating Plaintiff would end her H-1B visa status.

72.    Given that Plaintiff was not physically in the country, when her visa status ended,

under immigration rules she could not return, and this complicated her ability to continue with her career and ability to pursue her studies for her DBA at a US business school.

73.    Defendant CLAL wrongfully took advantage of this situation, and terminated Plaintiff to keep her out of the United States.

74.    On the morning of January 13, 2025 Plaintiff, through a lawyer named Anthony Finley, formally raised with Defendant CLAL's counsel and Board member Steve Levin, Plaintiff's concerns about improper salary payments to the Defendant's senior executives and other forms of IRS and non-profit fraud by the on the morning of January 13, 2025 and its leaders.

75.    By that evening, Plaintiff was terminated out of retaliation.

76.    Plaintiff was only terminated to strand her in France so that Defendant CLAL could attempt to silence her.

77.    Plaintiff uncovered multiple instances of financial fraud by Defendant CLAL.

78.    Plaintiff, throughout nearly all of 2024, was engaged in auditing Defendant CLAL's previous three years of finances.

79.    Defendant CLAL could not lose Plaintiff as she went through the audit as Defendant CLAL was heavily reliant on her to satisfy CLAL's obligations to the IRS.

80.    Once the audit was completed, however, Defendant CLAL seized the opportunity to fire Plaintiff for identifying the financial fraud.

81.    After Plaintiff spoke out against the fraud, she was terminated while on an approved trip to France.

82.    Plaintiff was also terminated, in part, out of retaliation because she complained about not being paid her prevailing wage based on her H-1B Visa status.

83.    As well, Plaintiff was entitled to vacation and other paid leave benefits.

84.    When her employment ended, Plaintiff was not paid her vacation and other paid

leave benefits.

85.    Defendant CLAL does not, upon information and belief, maintain a written policy that denies employees their earned benefits when their employment ends.

86.    As well, when Plaintiff's employment ended, Defendant sent Plaintiff an incorrect w-2 wage statement.

87.    That wage statement and tax form was excessive by thousands of dollars.

88.    When Plaintiff raised these discrepancies, Defendants made the defamatory statement pictured above, and accused Plaintiff of stealing money, despite Plaintiff having clearly documented in Defendant CLAL's files that the "excess funds" were not Defendant CLAL's funds, but money received by Defendant CLAL's compensation manager, ADP from the IRS for tax refunds due Plaintiff and not taxable income.

89.    For clarity, Defendants sent Plaintiff a false w-2, then relied on that w-2 to claim that Plaintiff stole money from them, without making any showing that the allegedly stolen money had actually left any account held by Defendant.

90.    This is demonstrably false and was designed to dissuade Plaintiff from bringing legal action against Defendant.

## CAUSES OF ACTION
## FIRST CLAIM

### Failure to Pay Prevailing Wage under 8 U.S.C. § 1182(n)

91. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

92. Under 8 U.S.C. § 1182(n), to properly hire a non-resident alien like Plaintiff, Defendant CLAL was obligated to accurately report Plaintiff's job title and to pay Plaintiff "the prevailing wage level for the occupational classification in the area of employment."

93. Plaintiff was a Controller in New York City.

94. The average pay for a controller in New York City is approximately $150,000.

95. Plaintiff's base pay was $92,000.

96. Plaintiff was not paid her prevailing wage.

97. As such, Defendant CLAL intentionally and willfully violated Plaintiff's right to be paid a prevailing wage, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses.

## SECOND CLAIM

### Retaliation for Complaining about the Failure to Pay Prevailing Wage under 8 U.S.C. § 1182(n)(2)(C)

98. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

99. Under 8 U.S.C. § 1182(n), to properly hire a non-resident alien like Plaintiff, Defendant CLAL was obligated to accurately report Plaintiff's job title and to pay Plaintiff "the prevailing wage level for the occupational classification in the area of employment."

100. Pursuant to 8 U.S.C. § 1182(n)(2)(C)(iv) it is a violation of the law for an employer who has filed an application under 8 U.S.C. § 1182(n) to intimidate, threaten, restrain, coerce, blacklist, discharge, or in any other manner discriminate against an employee (which

term, for purposes of this clause, includes a former employee and an applicant for employment) because the employee has disclosed information to the employer, or to any other person, that the employee reasonably believes evidences a violation of 8 U.S.C. § 1182(n), or any rule or regulation pertaining to 8 U.S.C. § 1182(n).

101.    Plaintiff was a Controller in New York City.

102.    The average pay for a controller in New York City is approximately $150,000.

103.    Plaintiff's base pay was $92,000.

104.    Plaintiff was not paid her prevailing wage.

105.    Plaintiff complained about not being paid her prevailing wage.

106.    Plaintiff was terminated because she complained about not being paid her prevailing wage.

107.    As such, Defendant CLAL intentionally and willfully violated Plaintiff's right to be free from retaliation, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses.

## THIRD CLAIM

**Retaliation for Complaining about Illegal Salary Payments, New York Labor Law 740**

108.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

109.    New York Labor Law 740 provides protection for employees who make complaints about improper salary payments, tax fraud, and excessive salary contributions by a 501(c) organization like Defendant CLAL.

110.    Plaintiff complained that Defendant CLAL had engaged illegal pay practices and, specifically, excessive salary contributions for three employees.

111.    Upon information and belief, Defendant CLAL does not maintain an

15

appropriate whistleblower policy or practice.

112.    Plaintiff was terminated for identifying and raising these concerns.

113.    As such, Defendant CLAL intentionally and willfully violated Plaintiff's right to be free from retaliation, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses

## FOURTH CLAIM

### Retaliation for Complaining about Illegal Salary Payments, 26 U.S. Code § 7623

114.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

115.    26 U.S. Code § 7623(d) prevents retaliation against employees who notify supervisors that the IRS is being defrauded or that a company is underpaying taxes.

116.    Plaintiff informed her supervisor that Defendant CLAL was paying less in taxes because of the financial fraud it was engaged in.

117.    After Plaintiff notified Defendant CLAL that it had engaged in fraud, Plaintiff was retaliated against and terminated.

118.    As such, Defendant CLAL intentionally and willfully violated Plaintiff's right to be free from retaliation, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses.

## FIFTH CLAIM

### Termination as a result of National Origin Discrimination

119.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

120.    The New York City Human Rights Law prohibits discrimination on the basis of national origin.

121.    Plaintiff was and is a foreign national, a resident of France.

122.    In January 2025, Plaintiff returned to France for her sister's wedding.

123.    While abroad, Defendant CLAL terminated Plaintiff.

124.    Upon information and belief, all individually named Defendants were aware of and engaged in the scheme to terminate Plaintiff while abroad.

125.    But for being a foreign national, Plaintiff would not have been terminated and, at the very least, would not have been terminated in the manner which she was terminated.

126.    Plaintiff was lawfully in the United States pursuant to an H-1B visa.

127.    Defendant CLAL was, upon information and belief, aware that terminating Plaintiff would demand that they pay her reasonable expenses to return home, pursuant to 8 C.F.R. § 214.2(h)(4)(iii)(E).

128.    To avoid this obligation, Defendant CLAL terminated Plaintiff while she was home in France.

129.    As well, upon information and belief, Defendant CLAL failed to properly withdraw the H-1B petition with USCIS until late in January of early February, several weeks after her termination.  This failure would only provide further evidence that Defendant CLAL moved with haste to terminate Plaintiff illegally, and not pursuant to any legitimate business reasons.

130.    As such, Defendants intentionally and willfully violated Plaintiff's right to be free from discrimination, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses.

## SIXTH CLAIM

**Failure to provide a correct W-2 form, pursuant to 26 U.S.C. § 6721 & § 6722**

131.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

132.    Under 26 U.S.C. § 6721, Defendant CLAL was obligated to deliver a correct (or to correct an incorrect) wage statement w-2 form.

133.    Under 26 U.S.C. § 6721, Defendant CLAL was obligated to deliver a correct wage statement w-2 form.

134.    Defendant CLAL was obligated to send this wage statement no later than January 31, 2025.

135.    Defendant CLAL, to this day, has still not sent a correct wage statement to Plaintiff.

136.    As such, Defendant CLAL is liable for all penalties, costs, expenses, and attorney fees for the repeated failures to furnish a correct wage statement.

## SEVENTH CLAIM

**Retaliation for complaints that Defendant CLAL had not provided a W-2 form**

137.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

138.    26 U.S. Code § 7623(d)(1)(A) protects employees from retaliation if the complaint about a violation of the IRS's code, rules, and regulation.

139.    Plaintiff complained that she did not receive her tax forms in a timely manner.

140.    Defendant CLAL then made defamatory statements about Plaintiff.

141.    As well, Defendant CLAL provided Plaintiff an incorrect W-2 form.

142.    Defendant CLAL also threatened Plaintiff, calling her a thief, and stated, falsely, that she had stolen approximately $19,000 from Defendant CLAL.

143.    Defendant CLAL owes Plaintiff all emotional distress, penalties, costs, expenses, and attorney fees related to the retaliatory animus directed at her.

## EIGHTH CLAIM

**Defamation against Defendant Hirschfield**

144.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

145.    Defendant Hirschfield stated that Plaintiff "purposefully misrepresents" the law for her own benefit.

146.    Defendant Hirschfield made this statement to others, and it is patently false.

147.    Defendant Hirschfield only made this defamatory statement to harm Plaintiff.

148.    The defamatory statement is false and provably false.

149.    The defamatory statement was made to harm Plaintiff's reputation and it did harm Plaintiff's reputation.

150.    Defendant Hirschfield's statement is defamation per se as it is defamatory about her ability to understand and interpret financial laws – which is directly related to the core functions of her profession.  As such, damages are presumed and need not be specified with particularity.

151.    Defendant Hirschfield owes Plaintiff all damages flowing from the loss of reputation that stemmed from the defamation statement, and any and all damages stemming from any other defamatory statements or repetition of this statement to others.

## <u>NINTH CLAIM</u>

**National Origin Discrimination**

152.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

153.    The New York City Human Rights Law prevents and prohibits inequitable and discriminatory pay practices on the basis of national origin status.

154.    It also provides for individual liability.

155.    Plaintiff is a French citizen.

156.    Defendants were aware that Plaintiff is a French citizen.

157.    Defendants conspired to pay Plaintiff a lower salary than she was entitled to because she is a French citizen.

158.    Defendants assumed they could take advantage of Plaintiff as a foreign national.

159.    As such, Defendants intentionally and willfully violated Plaintiff's right to be free from discrimination, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

B. For the second cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

C. For the third cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

D. For the fourth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

E. For the fifth cause of action, damages for wages and emotional distress,

compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

F. For the sixth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

G. For the seventh cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

H. For the eighth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

I. For the ninth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements; and

J. For such other and further relief as the Court deems just and proper.

Dated:
February 28, 2025

**HARMAN GREEN PC**

By: _____
Walker G. Harman, Jr.
140 Broadway, Fl 46
New York, NY 10005
824 Exposition Ave.,
Suite 8
Dallas, Texas 75226
(646) 248-2288

wharman@theharmanfirm.com
erichardson@theharmanfirm.com
*Attorneys for Plaintiff*