UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE SARAH VIVIANE
BOUDJELTA,

                    Plaintiff,

– against –

CLAL-THE NATIONAL JEWISH
CENTER FOR LEARNING AND
LEADERSHIP INC, BRADLEY RABBI
HIRSCHFIELD, ELAN BABCHUCK,
*and* STEVEN ROTTER,

                    Defendants.

**OPINION & ORDER**

25-cv-1729 (ER)

Ramos, D.J.:

    Christine Sarah Viviane Boudjelta filed this action against CLAL-The National Jewish Center for Learning and Leadership Inc. ("CLAL"), Rabbi Bradley Hirschfield, Elan Babchuck, and Steven Rotter (collectively, "Defendants") on February 28, 2025 alleging that Defendants violated the Immigration and Nationality Act ("INA"), the Taxpayers First Act ("TFA"), New York Labor Law ("NYLL"), the New York City Human Rights Law ("NYCHRL"), and that Hirschfield committed tortious defamation.

    Before the Court is Defendants' motion to dismiss the instant action pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the three federal claims are dismissed and the Court declines to exercise supplemental jurisdiction over the state law claims. Accordingly, Defendant's motion is GRANTED.

I.    BACKGROUND

    A. Factual Background

    The following facts are drawn from allegations contained in the first amended complaint, Doc. 10, which the Court accepts as true for purposes of the instant motion. *Koch v. Christie's International, PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Boudjelta is a French citizen who was employed by CLAL through the non-immigrant H-1B visa program. ¶ 2.[1] CLAL is a 501(c)(3) not-for-profit corporation headquartered in New York. ¶ 6. Hirschfield is president of CLAL, ¶ 7, Babchuck is an executive at CLAL, ¶ 8, and Rotter is chairman of the board of CLAL, ¶ 9.

In June of 2024, CLAL submitted a petition to the Immigration Service of the U.S. Department of Homeland Security to obtain Boudjelta's visa indicating that she would be employed in the role of bookkeeper. ¶ 22. Boudjelta alleges that in reality she worked as a controller. ¶ 27. She further alleges that CLAL understated her role and responsibilities, knowing that they would be much more extensive, in order to avoid the requirement to pay the prevailing wage for a controller in the New York area. ¶ 25. While the prevailing wage for a controller in New York is approximately $150,000 per year, she was only paid $92,000 per year. ¶¶ 28, 31. Boudjelta alleges that CLAL deliberately hired her knowing that it could pay her less in light of her status as a foreign national, and intending to profit from her underpayment. ¶¶ 13, 23.

While working at CLAL as controller, Boudjelta alleges that she observed transactions and ongoing business practices detailed below that led her to believe that certain of CLAL's executives were engaged in financial and tax fraud involving the organization for their personal benefit.[2] ¶¶ 35, 40, 46, 53, 55, 92. These activities included failure to report compensation paid to Babchuck and others on the organization's annual Form 990 for many years, ¶¶ 35–36; senior executives taking significant parts of their compensation as parsonage,[3] despite not meeting the requirements of IRC § 107, ¶¶ 39–40; making grants to individuals closely connected to

---

[1] Unless otherwise stated, citations to "¶ __" refer to paragraphs within the first amended complaint, Doc. 10.

[2] The complaint does not include specific dates related to these alleged transactions or interactions between Boudjelta and members of CLAL management.

[3] Parsonage refers either to a physical dwelling or, as alleged here, to an allowance provided by a religious organization to a minister in its employ for housing-related expenses. Parsonages receive favorable tax treatment subject to certain conditions stipulated in the Internal Revenue Code.

the organization, including current employees, without abiding by generally accepted accounting principles, ¶¶ 58–59; using organizational funds to pay portions of Hirschfield and Babchuck's daily and monthly expenses, ¶ 62; and expensing inappropriate purchases, such as luxury cruises, first-class travel, and expensive restaurant meals for friends of CLAL's leadership. ¶ 42.

When Boudjelta repeatedly informed senior management about the problems with CLAL's accounts, ¶ 53, it made Hirschfield and Babchuck irate. ¶ 54. Eventually, Boudjelta alleges that Defendants jointly and secretly agreed to replace her due to the danger she posed to the organization. ¶ 44. On January 13, 2025, following the completion of CLAL's 2023 audit, the filing of their 2023 Form 990,[4] and the closure of their accounts for 2024, Boudjelta, through her attorney, formally raised her concerns about CLAL's improper salary payments and other forms of fraud to CLAL's counsel and one of its Board members. ¶¶ 65, 72–73, 89. Boudjelta was terminated later that same day while she was out of the country on an approved vacation. ¶¶ 86, 89–90. Boudjelta alleges that this was done in direct retaliation for raising concerns related to the fraudulent activity conducted by CLAL's management, and that Defendants deliberately terminated her while she was abroad to prevent her from returning to the United States in light of her immigration status. ¶¶ 75–88, 90. The termination notice indicated that she was being let go because of poor job performance, despite having been praised many times over the course of months by Babchuck for her "extraordinary efforts" at CLAL in closing three years of unaudited accounts in less than ten months. ¶¶ 44, 74.

Following her termination, Boudjelta was not paid for her unused vacation or other paid leave time. ¶ 99. She was also sent an incorrect W-2 statement that overstated the compensation she actually received by thousands of dollars. ¶ 101–102. Sometime in late January or early February, 2025, Boudjelta raised these issues with the company.

---

[4] The complaint does not specify on which date the 2023 audit and the filing of CLAL's Form 990 were completed.

3

¶¶ 98–103.  In response, Hirschfield sent an email dated February 6, 2025, to another CLAL employee, Ms. Frommer, on which Boudjelta was unintentionally copied.  ¶¶ 60, 103.  The email indicated that

> [t]his is classic behavior for Sarah.  She invokes a law that she completely misunderstands, or purposefully misrepresents, failing to appreciate that the forms were made available online well in advance of the deadline, as required by law, and instead shifts the blame to others because she doesn't know what she's talking about or how to take care of her own business.

Doc. 10 at 10.  Boudjelta alleges that Hirschfield's email is defamatory, and that he eventually accused her of stealing money from CLAL.  ¶¶ 103–105.

### B. Procedural Background

Boudjelta filed this instant action on February 28, 2025, and amended the complaint on May 23, 2025.  Docs. 1, 10.  She alleges seven claims:  (1) failure to pay prevailing wage in violation of the INA, 8 U.S.C. § 1182(n); (2) retaliation for complaining about failure to pay prevailing wage in violation of the INA, 8 U.S.C. § 1182(n)(2)(C); (3) retaliation for complaining about illegal salary payments in violation of NYLL, §§ 215, 740; (4) retaliation for complaining about illegal salary payments in violation of the TFA, 26 U.S.C. § 7623; (5) termination as a result of national origin discrimination in violation of the NYCHRL; (6) tortious defamation; and (7) national origin discrimination in violation of the NYCHRL.  Doc. 10 at 14–20.

On June 13, 2025, Defendants moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6).  Doc. 11.  Discovery was stayed on August 11, 2025 pending the Court's decision on the instant motion.  Doc. 18.

## II. LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Christie's International*, 699 F.3d at 145.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of Rule 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). To state a plausible claim, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III.   DISCUSSION

### A.  Extrinsic Materials

As a preliminary matter, Defendants urge the Court to consider several items that they attach as exhibits to the instant motion: (1) email messages sent between Boudjelta, other CLAL employees and executives, and the organization's external auditors dated July 30 through August 1, 2024 discussing issues related to CLAL's 2021 and 2022 Form 990 previously filed with the IRS and whether amended forms needed be filed, Doc. 12-1; (2) the termination notice sent to Boudjelta on January 13, 2025 and accompanying email messages, Doc. 12-2; and (3) email messages sent between Boudjelta, other CLAL employees, and executives dated February 5 through February 6, 2025, excerpted in the

amended complaint, Doc. 12-3.  Defendants indicate that these additional materials are integral to Boudjelta's seven claims and "even directly contradict" her allegations.  Doc. 12 ¶ 4.  She responds that this inclusion was "improper" and that "Defendants' Motion is entirely built on disputing facts."  Doc. 14 at 7–8.  Boudjelta also attaches one exhibit to her opposition brief, consisting of email messages between attorneys representing her and those representing Defendants dated January 13, 2025, Doc. 14-1.  She argues that the Court should use the exhibit to convert the instant motion into one for summary judgement.  Doc. 14 at 9, n. 2.

In deciding a Rule 12(b)(6) motion, a court is "normally required to look only to the allegations on the face of the complaint."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  However, the court may also consider documents that are:  (1) attached to the complaint; (2) incorporated by reference in the complaint; or (3) integral to the complaint.  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).  The materials submitted by Defendants were not attached to the amended complaint, and their contents are not specifically set forth therein.  As noted above, Defendants argue instead that the materials are integral to Boudjelta's claims.

For a document to be integral, the complaint must do more than merely mention it.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559–60 (2d Cir. 2016).  The complaint must "rel[y] heavily upon its terms and effect . . . ."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  "The Second Circuit has 'largely' limited the scope of 'integral' documents to 'written instruments'—*i.e.*, those legal documents that, in writing, define a party's 'rights, duties, entitlements, or liabilities'—as compared to evidence that merely makes a claim more or less factually likely."  *Vogel v. TakeOne Network Corp.*, No. 22 Civ. 3991 (ER), 2023 WL 5276857, at *4 (S.D.N.Y. Aug. 16, 2023) (quoting *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020)).  "'And even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the

6

document,' and it must be clear that 'there exist no material disputed issues of fact regarding the relevance of the document.'" *AECOM*, 19 F.4th at 106 (quoting *DiFolco*, 622 F.3d at 111).

Here, the extrinsic documents submitted by the Defendants are not legal in nature. They do not confer "obligations upon which the plaintiff's complaint stands or falls." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). It is also clear that Boudjelta did not rely heavily on their terms and effect when drafting her complaint, as demonstrated by the allegations she makes regarding CLAL's financial practices and the circumstances surrounding her termination. Specifically, Boudjelta alleges that it was improper for CLAL not to amend their 2021 and 2022 Form 990, and that she could not have been terminated for poor performance because she had been praised for her extraordinary efforts at CLAL many times. Doc. 10 ¶¶ 38, 74. Rather, the emails seem intended to refute the idea that "CLAL 'engaged' in an 'activity, policy or practice' which Plaintiff *reasonably* believed to be illegal." Doc. 13 at 17 (emphasis in original). Such considerations, involving factual disputes that invite the Court to weigh the plausibility of competing allegations using extrinsic evidence, are inappropriate in consideration of a motion to dismiss. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) ("[A] court may not resolve the motion [to dismiss] by weighing the plausibility of competing allegations or by considering evidence extrinsic to the non-movant's pleading without converting the motion to one for summary judgement.").

With regard to the termination notice in particular, Boudjelta contests both the relevance and accuracy of the exhibit. The notice includes multiple statements that Boudjelta's job performance is inadequate and that she had been previously informed about CLAL's concern in that regard, that the company had worked with her to try to ensure a smooth transition of her immigration status, and that CLAL would reimburse her for transportation costs incurred if she returned to France. Doc. 12-2 at 4. Boudjelta

7

indicates that "Defendants' submission [of the termination notice] is not only improper, but forms the basis for a complete and utter lie before the tribunal." Doc. 14 at 8. Further, "[t]hat Exhibit does nothing to prove that 1) the contents are accurate, 2) Plaintiff received the letter, or 3) that Defendants followed through with the 'promises' allegedly contained therein." Doc 14 at 11. While the Court notes that the termination notice is clearly relevant to various of her claims, these statements explicitly and implicitly challenge the accuracy of the termination notice, further rendering it improper for consideration. *AECOM*, 19 F.4th at 106. The Court will not consider the extrinsic materials submitted by Defendants in deciding the instant motion to dismiss.

Boudjelta also argues that in light of the "implications of attaching exhibits to a motion to dismiss," the Court "can and should begin [the] process [of converting Defendants' motion into a motion for summary judgement], should direct Plaintiff to submit evidence in response, should convert the motion, and should deny it as factual disputes exist." Doc. 14 at 8. Boudjelta attaches her own supporting exhibit, consisting of email messages between attorneys representing her and those representing Defendants dated January 13, 2025, Doc. 14-1, "so the Court can convert the Motion to a Motion for Summary Judgement." Doc. 14 at 9 n. 2.

When a district court is "considering a motion to dismiss [and] is presented with matters outside the pleadings, the court 'must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment.'" *Bareby v. Union Mutual Fire Insurance Company*, No. 22 Civ. 6034 (JGK) 2023 WL 1818674, at *2 (S.D.N.Y. Feb. 8, 2023) (citing *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)). Conversion to a summary judgement motion is generally not proper unless the parties have had the opportunity to conduct appropriate discovery and submit additional supporting materials. *See Wajilam Exports (Singapore) Pte. Limited v. ATL Shipping Limited*, 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006) ("There would be little point in considering a summary judgement motion when significant relevant facts may

yet be discovered."). In this case discovery was specifically stayed pending ruling on the Defendants' instant 12(b)(6) motion, Doc. 18, and thus the parties have not had an opportunity to propound discovery requests or exchange documents. Accordingly, the Court will not convert the instant motion into one for summary judgment and will not consider the extrinsic material that Defendants or Boudjelta submitted in its disposition of this motion.

### B. Boudjelta Failed to Exhaust Administrative Remedies

Defendants argue that Boudjelta's INA and TFA claims should be dismissed because she has failed to pursue all of the remedies available to her through the Department of Labor or the Internal Revenue Service. "Administrative exhaustion is a doctrine that 'holds that federal courts should refrain from adjudicating a controversy if the party bringing suit might obtain adequate relief through a proceeding before an administrative agency.'" *United States v. Amalfi*, 47 F.4th 114, 122 (2d Cir. 2022) (quoting *Washington v. Barr*, 925 F.3d 109, 116 (2d Cir. 2019)). Such procedural structures are common in whistleblower statutes, reflecting "Congress's clear intent for federal courts to exercise jurisdiction . . . only after the claimant has first exhausted the statute's administrative remedies." *Daly v. Citigroup Inc.*, 939 F.3d 415, 428 (2d Cir. 2019).

First, the Court finds that Boudjelta failed to exhaust administrative remedies for her retaliation and wrongful termination claims under the INA. "Section 1182(n)[5] does not provide for a private right of action in federal court in the first instance for complaints concerning an employer's violation of the Section. [Rather,] Section 1182(n) contemplates judicial review at the conclusion of the administrative proceedings." *Shah v. Wilco Systems, Inc.*, 126 F. Supp.2d 641, 647–48 (S.D.N.Y. 2000). Complaints made

---

[5] "[T]he Secretary [of Labor] shall establish a process for the receipt, investigation, and disposition of complaints respecting a petitioner's failure to meet a condition specified in an application submitted under paragraph (1) or a petitioner's misrepresentation of material facts in such an application. Complaints may be filed by any aggrieved person . . . ." 8 U.S.C. § 1182(n)(2)(A).

pursuant to § 1182(n) must be filed with the Wage and Hour Division of the Department of Labor. *See* 8 U.S.C. § 1182(n)(2)(A); 20 C.F.R. §§ 655.805, 655.806, 655.815. Their determination may be appealed before an administrative law judge, whose decision may in turn be reviewed by the Secretary of Labor. 20 C.F.R. §§ 655.820, 655.840, 655.845. Only after the Secretary's decision has been issued may the case be appealed by any party to the appropriate United States District Court. 20 C.F.R. § 655.850.

Here, as Boudjelta acknowledges in the amended complaint, she has begun proceedings before the Department of Labor, which are ongoing. Doc. 14 at 9. Boudjelta requests that her claims be held in "abeyance" while the administrative action proceeds, but cites no authority indicating that this Court may do so or under what circumstances. *Id.* Defendants argue that this is improper. Doc. 15 at 7. A federal statute that does not create or imply a private right of action does not present a federal question pursuant to 28 U.S.C. § 1331 on behalf of private individuals. *Merrel Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986). Because the INA does not provide a private cause of action, and only "contemplates judicial review at the conclusion of administrative proceedings," the Court does not have subject matter jurisdiction while the Department of Labor proceedings are ongoing. *Shah*, 126 F. Supp.2d at 648. Accordingly, the Court finds that Boudjelta's § 1182(n) claims are improper and must be dismissed.

Boudjelta's claim under the TFA suffers from a similar defect and must likewise be dismissed. "A plaintiff may not bring an action under Section 7623(d)[6] in federal court unless he has first filed a complaint with the Secretary of Labor and shown that the Secretary has not issued a final decision within 180 days of the filing of that complaint and that there is no showing that such delay is due to the bad faith of the claimant."

---

[6] "A person who alleges discharge or other reprisal by any person in violation of paragraph (1) may seek relief . . . by (i) filing a complaint with the Secretary of Labor, or (ii) if the Secretary of Labor has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States . . . ." 26 U.S.C. § 7623(d)(2)(A).

10

*Gooden v. Joseph P. Addabbo Fam. Health Center, Inc.*, No. 21 Civ. 6313 (RPK) (SJB), 2023 WL 2709735, at *7 (E.D.N.Y. Mar. 30, 2023) (internal quotations omitted); *see also* § 26 U.S.C. 7623(d)(2)(A). Defendants make substantially the same argument concerning administrative exhaustion with regard to Boudjelta's claims under the TFA. Doc. 15 at 7. Defendants also argue, and the Court finds, that by failing to respond to Defendants' administrative exhaustion argument in her opposition, Boudjelta has abandoned her claim under the TFA. *Id.* A court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Lipton v. County of Orange, NY*, 315 F. Supp.2d 434, 446 (S.D.N.Y. 2004).

### C. Supplemental Jurisdiction Over the Remaining State Law Claims

Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) (stating that, under § 1367(a), as under *Mine Workers v. Gibbs*, 383 U.S. 715 (1966), supplemental jurisdiction applies to state-law claims that arise "from the same facts" as a federal-law claim over which a court has original jurisdiction). The doctrine of supplemental jurisdiction is traditionally "a doctrine of discretion, not of plaintiff's right." *Kolari v. N.Y.-Presbyterian Hospital*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Subsection (c) of § 1367 enumerates circumstances in which a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a)[.]" 28 U.S.C. § 1367(c). One such circumstance is where, as here, "the district court has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3).

Having dismissed Boudjelta's federal claims under the INA and TFA for want of subject matter jurisdiction, the Court declines to adjudicate her related state-law claims.

*See Royal Canin*, 604 U.S. at 33, 39 (explaining that "with any federal anchor gone, supplemental jurisdiction over the residual state claims disappears as well"); *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 404 (2d Cir. 2017) (Calabresi, J. concurring) (noting that "after all federal claims have been dismissed, the default rule is that federal courts should not decide related state-law claims unless there is good reason for doing so"); *Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law . . . [I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well."). Accordingly, as Boudjelta's federal claims have all been dismissed, the Court declines to exercise jurisdiction over the remaining state-law claims under the NYLL, NYCHRL, and state tort law.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Boudjelta's federal claims pursuant to Rule 12(b)(6) is GRANTED.  The Court declines to exercise supplemental jurisdiction over her remaining claims pursuant to 28 U.S.C. § 1367(c)(3) and therefore dismisses them as well.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 11, and close the case.

It is SO ORDERED.

Dated:   October 20, 2025
         New York, New York

                                                    _____
                                                       EDGARDO RAMOS, U.S.D.J.